UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JENNIPHER BELBUSTI,

    Plaintiff,

        v.                                        Civ. No. 3:19-cv-00291 (WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

     Defendant.

**RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Jennipher Belbusti's, application for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the

---

[1]     The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2]     Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

Commissioner"), or in the alternative, an order remanding this case for a rehearing. [Doc. #15]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #16]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion to reverse/remand and denies the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work

2

experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920.[3] The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must

---

[3] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

   A. **Facts**

   Plaintiff filed her DIB and SSI applications on August 28, 2016, alleging an onset of disability as of March 18, 2016 . Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On February 5, 2018, a hearing was held before Administrative Law Judge Deirdre R. Horton ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On March 15, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On January 16, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

   Plaintiff was forty-four years old on the alleged onset date. (R. 21). She completed high school and has past relevant work as an accounting clerk, supervisor. (R. 20-21). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##15-1; 16-1]. The Court adopts these statements and incorporates them by reference herein.

   B. **The ALJ's Decision**

   The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

   At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 18, 2016. (R. 12). At Step Two, the ALJ found Plaintiff

had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), degenerative disc disease of the lumbar spine with mild stenosis, diabetes mellitus, right shoulder pain, status post remote fracture, major depressive disorder and anxiety disorder. (R. 12-13). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 13-15). Next, the ALJ determined Plaintiff retains the following residual functional capacity[4]:

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: can frequently climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can perform frequent balancing; can perform occasional stooping, kneeling, crouching, and crawling; must avoid concentrated exposures to respiratory irritants such as dust, fumes, and gases; can perform simple routine tasks; works best in a non-public setting; and can perform frequent overhead reaching on the right.

(R. 15).

At Step Four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (R. 20). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 21-22). Accordingly, the ALJ determined that Plaintiff was not disabled from March 18, 2016, the alleged onset date, through March 15, 2018, the date of the ALJ's decision. (R. 22-23).

## II. DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

---

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§404.1545(a)(1); 416.945(a)(1).

a. **Development of the Record**

Plaintiff argues that the ALJ's ruling should be reversed or remanded for a number of reasons relating to a failure to develop the record and obtain medical source statements from *any* of her treating physicians and clinicians including primary care physician Dr. David Riccio, psychotherapist Amanda L. Young, LPC, LADC, pulmonologist Dr. Michael Imevbore and orthopedist Dr. David Bloom. She also argues that the ALJ should have requested an updated medial source statement from APRN Maura Fischer. [Doc. #15-2 at 1-15]. For the reasons that follow, the Court finds that the ALJ did not fulfill her duty to develop the record and that remand is warranted to obtain medical source statements from treating physicians and clinicians.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient."

6

*Halle v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not a case where plaintiff suffers relatively little physical impairment such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much by designating as "severe" plaintiff's COPD, degenerative disc disease with mild stenosis, diabetes mellitus, right shoulder pain, status post remote fracture, major depressive disorder, and anxiety disorder, and assessing a RFC with extensive and detailed limitations. (R. 12, 15-20).

Here, the ALJ assigned "significant weight" to the physical and mental RFC assessments of State agency consultants Dr. Douglas Rau and Dr. Karen Sarpolis at the reconsideration level and assigned "partial weight" to the physical and mental RFC assessments by State agency consultants Dr. Robert DeCarli and Dr. Lawrence Schaffin, none of whom treated or examined Ms. Belbusti. (R. 19, *see* R. 101-13; 114-26 (initial level); 129-45; 146-62 (reconsideration level)). The ALJ's reliance on the assessment by the State Agency consultants is problematic because there is no medical opinion from a treating physician, clinician and/or specialist addressing the functional limitations that flow from Plaintiff's physical and mental impairments to support the ALJ's RFC findings.

<u>Mental Health Impairments</u>

With regard to Plaintiff's depression and anxiety, Ms. Belbusti began mental treatment at Cornell Scott Hill Health ("Hill Health") on February 3, 2016, a behavioral health evaluation was

7

conducted by APRN Christina Moorer. (R. 1101-05). An initial assessment by Amanda Young, LPC, LADC on February 19, 2016, states that Ms. Belbusti was diagnosed with major depressive disorder recurrent moderate and cannabis use disorder, mild and assigned a GAF score of 45. (R. 1091, 1099). Plaintiff reported a history of depression since age 21 with symptoms becoming increasingly worse after her divorce in 2014. (R. 1093). She reported a psychiatric hospitalization in 2014, "after her doctor sent her there 'because they didn't think I was safe.'" (R. 1093). On intake plaintiff admitted to passive suicidal thoughts with no intent." (R. 1094). Noted consequences of Plaintiff's "mental disorder" included: "job disruption, social isolation, family disruption, homelessness, financial hardships, emotional distress." (R. 1095). Individual counseling was recommended.[5] *Id.*

Plaintiff's first post-onset session with LPC Amanda Young was on March 21, 2016. (R. 1056-58).[6] On March 28, 2016, a psychiatric evaluation was completed by Dr. Isis Burgos-Chapman. (R. 1059-66). The doctor noted a history and current symptoms suggestive of depression and stated she would benefit from antidepressant therapy. (R. 1064). "Also wonder about possible GAD [Generalized Anxiety Disorder] and will monitor for this." *Id.* Plaintiff treated with Dr. Burgos-Chapman from March through July 2016. Zoloft and Vistaril was prescribed. Although the doctor and therapist LPC Young noted some improvement in mood, Zoloft and Vistaril dosages were increased during the treatment relationship. (R. 1041, 1006, 1001-03, with several entries noting that anxiety symptoms were not improving or worsening. (R. 1036 ("becoming consumed with anxiety around her boyfriend's health"); R. 1029 ("Client

---

[5] The first therapy session with Amanda Young, LPC, LADC, was held on March 3, 2016. (R. 1076-77).
[6] Plaintiff treated with Ms. Young from February 2016 (R. 1093-1100), through December 28, 2017. (R. 2257-58).

has been isolated and becomes easily overwhelmed in stressful situations and continues to show insight and awareness."); R. 1021 (noting "anxiety worse at night when things are quiet."); (R. 1004-008 (noting improvement in depression but a worsening of anxiety "experienced periods of panic sxs and admits to feeling all the time lately due to stress at home."); R. 1006 ("Continue to wonder about possible GAD."); R. 1001-0003 ("Client presented with high anxiety including restlessness, and tearful at times…." "Client reported suicidal thoughts but denied plan or intent."); R. 993 ("reports she has a lot of anxiety.").

The record of evidence for mental health treatment is voluminous. In August 2016, medication management was transferred from Dr. Burgos-Chapman to APRN Maura Fischer at Hill Health. (R. 993-97). Ms. Belbusti met with APRN Fischer on fifteen occasions from August 2016 through December 2017. In addition, LPC Young provided therapy approximately thirty-six times from February 2016 through December 2017. APRN Fischer and LPC Young's treatment records contain raw medical data and/or bare medical findings such as medication notes, diagnosis, and Plaintiff's reports on mood, anxiety and other physical reports, but do not assess Plaintiff's functional abilities to do work related activities.

On February 16, 2017, APRN Fischer completed a Mental RFC Questionnaire, (R. 1287-91), indicating among other things, that Ms. Belbusti "continues to make minimal progress in treatment" and "would benefit from on-going treatment, resources and supports." (R. 1287). Eight signs and symptoms were detailed. (R. 1288). Of sixteen specified aptitudes for unskilled work, APRN Fischer found that Plaintiff was "seriously limited but not precluded" in eight of them, and "limited but satisfactory" in the other

eight.[7] APRN Fischer also indicated that Plaintiff was "seriously limited but not precluded" in all four of the specified aptitudes for skilled and semi-skilled work, (R. 1290), and added that Plaintiff "has poor concentration and struggles to follow through with tasks unless provided direct support" and "can experience emotional pain which impacts physical pain." (R. 1290). APRN Fischer opined that Plaintiff's mental impairments or treatment would cause her to be absent from work "more than four days per month." (R. 1291). This opinion, if credited, would indicate that Plaintiff had severe mental impairments significantly restricting Ms. Belbusti's ability to work.

The ALJ assigned "little weight" to the assessment. Specifically, the ALJ found that APRN Fischer was not an acceptable medical source and that

> her assessment is a checklist format with little explanation provided for the degree of impairment selected. This degree of limitation is also inconsistent with this provider's own treatment notes, which show the claimant was consistently found to display a coherent thought process, logical thought content, intact memory, and fair impulse control (Exhibits B11F, B25F, and B32F). Finally, her opinion that the claimant would likely be absent from work over 4 times per month is speculative and does not find support in the medical record as the record does not show that missed medical appointment[s] were a persistent problem.

(R. 20).

Here, the record makes clear that APRN Fischer and LPC Young were the sole mental health treatment providers during the disability period under review. These clinicians developed a treating relationship with Plaintiff and had ample opportunity to observe and examine her. APRN Fischer provided medication management and LPC Young provided therapy. Second, the Mental RFC Assessment Questionnaire completed by APRN Young was provided to her by the Agency. If the ALJ found the "checklist format" inadequate she should have requested further

---

[7] "Seriously limited but not precluded" is defined as "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." (R. 1289).

information. Despite the central role that APRN Fischer provided and despite APRN Fischer's Mental RFC assessment, there is no evidence that the ALJ asked APRN Fischer to provide an explanation or support for her findings. The ALJ's disbelief was based in part on treatment notes indicating that Ms. Belbusti displayed "a coherent thought process, logical thought content, intact memory and fair impulse control." (R. 20). A clinician's observation, however, that a claimant's mental condition is stable on medication and/or that thought processes are not impaired in a non-working setting does not support a medical conclusion that a claimant is capable of employment. *See Hall v. Astrue*, 882 F. Supp. 2d 732, 741 (D. Del. 2012).

Similarly, despite the lengthy and intensive nature of the treatment, the Administrative Record before this Court does not contain *any* medical source statement from LPC Young. Although, the ALJ found that Plaintiff did not have a persistent problem missing medical appointments, LPC Young noted on at least two occasions that Plaintiff was either at risk of discharge from the program due to excessive absenteeism or was failing to show for appointments thereby undermining the efficacy of treatment.[8] The Court also notes that during the disability period under consideration, Plaintiff was hospitalized three times with pulmonary issues. (R. 746-74; 1516-37 (9/12-9/14/16-shortness of breath and rib pain); R. 1221-58; 1262-63 (11/28-12/1/16-shortness of breath and cough); R. 1394-1427 (3/13-3/15/17-acute asthma/COPD exacerbation/emphysema); *see also* R. 2390 (1/10/18-Dr. Riccio noting, "patient broke her ribs due to coughing."). APRN Fischer's opinion that Ms. Belbusti's "ability to function in the work

---

[8] LPC Young added that "Client has missed multiple appointments due to being in the hospital and is here to avoid being discharged from the program." (R. 1849). On January 11, 2017, LPC Young "discussed with her the importance of attendance." (R. 1837). At the last appointment in December 2017, Plaintiff provided LPC Young with paperwork to complete in preparation for her disability hearing in February 2018. (R. 2257). This paperwork is not a part of the administrative record.

environment is seriously limited should not be discounted because of an inference gleaned from treatment records reporting on the claimant in other environments." *Hall,* 882 F. Supp. 2d at 740. For a person, such as Ms. Belbusti, who suffers from depression and anxiety, "the work environment is completely different from home or a mental health clinic." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). APRN Fischer opined that Ms. Belbusti's mental impairments rendered her "seriously limited" in a number of relevant work-related activities. Other information in the treatment records of APRN Fischer and LPC Young support this opinion.

> Non-medical or other sources including nurse practitioners, therapists, and public or private social agency personnel, may be considered in evaluating "the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006); 20 C.F.R. §§ 404. 1513(d) and 416.913(d).
>
> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as <u>nurse practitioners</u>, physician assistants, and <u>licensed clinical social workers</u>, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. SSR 06–03p, 2006 WL 2329939 at *3 (emphasis added).

*Shand v. Colvin*, No. 3:15 CV 761 (JGM), 2018 WL 389179, at *20 (D. Conn. Jan. 12, 2018); *see Crowder v. Colvin,* 561 F. App'x 740, 744 (10th Cir. 2014).

The principle that an ALJ should not substitute her lay opinion for the medical opinion of treating providers is especially profound in a case involving a mental disability where the *only* treatment providers were an APRN and a LPC.

> In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified

before him." *McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations omitted); *see also Filocomo v. Chater,* 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

*Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). This case warrants a remand for further development of the record. *Petruck v. Berryhill*, No. 3:18CV715 (AWT), 2019 WL 2171265, at *2 (D. Conn. May 20, 2019) (citations omitted) ("This duty to develop the record "is heightened in cases where the claimant is mentally impaired", as is the case here.").

Physical Impairments

The Court further notes that the ALJ did not cite to *any* opinion of a treating physician to support the physical RFC, including primary care physician Dr. David Riccio, orthopedist Dr. David Blum and/or pulmonologist Dr. Michael Imevbore who all had an opportunity to observe and examine Plaintiff and may be able to offer an opinion on how her impairments, alone or in combination, impact her ability to function in a work setting. *See* R. 1840 (LPC Young noting in January 2017, that Plaintiff "presented with depressive symptoms including sadness (tearful during the session), low motivation, and reported she has been sleeping a lot …Jennipher has had a lot medically going on with her and it has been impacting her mood."); R. 1436 (Dr. Riccio noting in January 2017, wildly fluctuating blood pressure, "her anxiety and depression is doing worse. Her back pain is worse, which is contributing to her depression because she has pain all the time…."); R. 1826 (Dr. Blum noting in January 2017, that Plaintiff "did not respond to epidural cort[isone] injection. [Patient] may be a candidate for sur[gery]."); R. 1963 (Dr. Riccio noting in March 2017 diabetes is "out of control," COPD, and anxiety "is unusually high"); R. 1390 (Dr. Imevbore noting in March 2017 that Plaintiff's anxiety, depression and COPD are all "worse"); R. 2319 (APRN Fischer noting in May 2017 that

Plaintiff has been falling lately, feels tired all day, cannot walk very long due to back pain.).

Accordingly, the Court finds that this case should be remanded for further development of the record from plaintiff's treating physicians and/or clinicians to obtain medical source opinions.

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart*, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* No. 09–CV–0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

*House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013).

Accordingly, the Court finds that additional administrative proceedings are required. On remand, the ALJ should develop the record as necessary to obtain opinions as to Plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation and

thoroughly explain his findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record ....") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Belbusti's] RFC." *Id*.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein. *See Moreau v. Berryhill*, Civil Action No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018)("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own."); *Snedeker v. Colvin,* Civil Action No. 3:13-cv-970 (GLS/ESH), 2015 WL 1126598, at *8 (N.D.N.Y. Mar. 12, 2015)(finding it is pointless to address Snedeker's remaining points of error until his low back impairment is factored into a residual functional capacity finding. "The outcome of this case in its present posture will not change whether or not these additional points are meritorious or baseless. Addressing them administratively on remand, however, may avoid a second costly action for judicial review.").

### III. CONCLUSION

For the reasons stated, Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #15]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #16]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

SO ORDERED, this 12th day of December, 2019, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge